Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| HUGO CARLOS DE LA UZ COLÓN<br><br>Peticionario<br><br>V.<br><br>BROCK JEFFREY PIERCE Y OTROS<br><br>Recurridos | KLCE202500352 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV05674<br><br>Sobre:<br><br>Cobro de Dinero-Ordinario, Daños, Reposesión de Bienes Muebles, Enriquecimiento Injusto, Persecución Maliciosa, Interdicto Permanente |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo

Marrero Guerrero, Juez ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece el Sr. Hugo Carlos de la Uz Colón (señor de la Uz Colón o peticionario) mediante *Petición de Certiorari* en la que nos solicita que revisemos una Orden y tres Resoluciones Interlocutorias emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] En los referidos dictámenes, el foro de instancia señaló una Vista Evidenciaria para dilucidar un asunto jurisdiccional y denegó la solicitud del peticionario para descalificar la representación legal unitaria de Brock Jeffrey Pierce (señor Pierce), The Roundtable LLC., Percival Services LLC., Abeona MV, LLC., y The Roundtable LLC., Series 75 (en conjunto, recurrido).

Por los fundamentos que expondremos a continuación, denegamos expedir el auto de *certiorari* solicitado por el peticionario.

---

[1] Apéndice de la *Petición de Certiorari*, Anejos 23, 22, 26 y 27, págs. 267-269, 265-266, 285-286 y 287-288.

**-I-**

El presente caso tuvo su génesis el 11 de octubre de 2023, cuando el señor de la Uz Colón presentó una *Demanda* contra el recurrido por incumplimiento contractual, cobro de dinero, daños y perjuicios, reposesión de una embarcación, enriquecimiento injusto, persecución maliciosa, sentencia declaratoria e interdicto permanente. En adición, solicitó remedios provisionales, incluyendo la prohibición de enajenar una propiedad inmueble.[2]

El 25 de abril de 2024, el recurrido presentó una *Moción de Desestimación* al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5).[3] En esencia, arguyó que el foro de instancia carecía de jurisdicción para entender en el caso debido a una cláusula contenida en un contrato de servicios profesionales suscrito por ambas partes. En específico, la referida cláusula disponía que cualquier controversia relacionada con el contrato sería dilucidada a través del proceso de arbitraje. Incluyó como anejo a su solicitud dispositiva, entre otros documentos, uno intitulado como "*Consulting Services Agreement*."

Por su lado, el 30 de mayo de 2024, el señor de la Uz Colón presentó una *Réplica a Moción de Desestimación* en la que, *inter alia*, negó que existiese un contrato de servicios profesionales, adujo que el documento presentado por el recurrido era fraudulento y señaló que no contaba con la firma del peticionario. Además, arguyó que entre las partes se elaboró un borrador de contrato de sociedad el cual, a pesar de que no se suscribió por escrito, se perfeccionó verbalmente por haberse ejecutado sus consecuencias. Incluyó como anejo, entre otros documentos, el referido borrador de contrato.[4]

---

[2] *Íd.,* Anejo 1, págs. 1-22.
[3] *Íd.,* Anejo 2, págs. 23-68.
[4] *Íd.,* Anejo 6, págs. 73-112.

Así las cosas, el 19 de julio de 2024, el TPI denegó la solicitud de desestimación y le ordenó al peticionario que enmendara su demanda para hacer una exposición más organizada y definida de sus alegaciones e incluir las partes indispensables del pleito según surgieran de los contratos.[5]

Posteriormente, el 26 de julio de 2024, el recurrido presentó una *Moción Informativa sobre el Contrato de Servicios entre las Partes* en la que aclaró que el documento anejado a su moción dispositiva no contenía la firma del peticionario debido a un error oficinesco, e incluyó una versión que contenía las firmas de ambas partes.[6]

Ante esto, el 5 de agosto de 2024, el TPI emitió una *Orden* en la que expresó, *inter alia*, que la controversia sobre la existencia del referido contrato se evaluaría en una vista evidenciaria.[7]

De otra parte, el 9 de septiembre de 2024, el señor de la Uz Colón presentó una *Demanda Enmendada en Cumplimiento de Orden y Solicitud de Remedios* en la que añadió como partes demandadas a Percival Services, LLC., Abeona MV, LLC. y The Roundtable LLC., Series 75.[8]

Tras varios trámites, el 29 de octubre de 2024, el recurrido presentó una segunda solicitud dispositiva a través de una *Moción de Desestimación o Paralización para Compeler el Arbitraje*.[9] En síntesis, reiteró que le correspondía a un foro de arbitraje la dilucidación de cualquier controversia sobre el contrato. Por consiguiente, solicitó la desestimación del pleito o, en la alternativa, que se paralizaran los procedimientos judiciales hasta tanto se dilucidaran las controversias sustantivas en el foro arbitral. Incluyó como anejo un correo electrónico en el que, según sostuvo, se muestra que el

---

[5] *Íd.,* Anejo 7, págs. 113-115.
[6] Apéndice de la *Solicitud de Desestimación y Alegato en Oposición al Recurso de Certiorari,* Anejo 3, págs. 6-18.
[7] *Íd.,* Anejo 2, págs. 3-5.
[8] Apéndice de la *Petición de Certiorari,* Anejo 8, págs. 116-142.
[9] *Íd.,* Anejo 9, págs. 143-175.

contrato no solo fue firmado por el señor de la Uz Colón, sino que él mismo lo envió a Percival Services, LLC.

A su vez, el 16 de diciembre de 2024, el señor de la Uz Colón presentó una *Oposición a Moción de Desestimación*.[10] Allí, arguyó nuevamente que no existía un contrato de servicios profesionales con una cláusula referente al procedimiento de arbitraje y reiteró las alegaciones contenidas en su demanda enmendada. Además, negó haber enviado el contrato de servicios profesionales a través de correo electrónico y reafirmó la existencia del contrato de sociedad verbal. En adición, anejó un documento intitulado *Agreement*.

Ese mismo día, el TPI denegó la solicitud de desestimación del recurrido a través de una *Resolución Interlocutoria*.[11]

Entretanto, el 8 de enero de 2025, el recurrido presentó una *Solicitud de Aclaración y Vista Evidenciaria* en la que le solicitó al TPI que clarificara si la denegatoria de la desestimación era sin perjuicio.[12] Esto a base de la orden que el foro de instancia emitió el 5 de agosto de 2024 sobre la celebración de la Vista Evidenciaria para determinar la existencia del contrato.[13] Cónsono con lo anterior, solicitó al foro aludido que señalara fecha para la celebración de una Vista Evidenciaria.

Por su parte, el 26 de enero de 2025, el peticionario presentó un escrito intitulado *Descalificación de Abogados* en el que solicitó al TPI que descalificara la representación legal del recurrido.[14] Razonó que la representación legal unitaria del señor Pierce y las personas jurídicas, constituía una violación al Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21, por ser representación simultánea adversa. Específicamente, adujo que los abogados del recurrido no

---

[10] *Íd.,* Anejo 10, págs. 176-189.
[11] *Íd.,* Anejo 11, págs. 190-191. Archivada y notificada en autos el 17 de diciembre de 2024.
[12] *Íd.,* Anejo 12, págs. 192-194.
[13] Apéndice de la *Solicitud de Desestimación y Alegato en Oposición al Recurso de Certiorari,* Anejo 2, págs. 3-5.
[14] Apéndice de la *Petición de Certiorari,* Anejo 13, págs. 196-204.

podían representar simultáneamente al señor Pierce en su carácter personal, y a las entidades jurídicas de las cuales este era principal ejecutivo. Sostuvo que ello representaba un conflicto de intereses, dado que los abogados que representan personas jurídicas les deben entera lealtad a estas, y no a sus ejecutivos.

En adición, el 27 de enero de 2025, el señor de la Uz Colón presentó una *Oposición A Solicitud Aclaratoria y Vista Evidenciaria*.[15] Allí, sostuvo que el recurrido no tenía facultad para solicitar la aclaración del tribunal toda vez que la *Resolución Interlocutoria* había advenido final y firme. Por tanto, adujo que la solicitud era académica, ya que le correspondía el haber presentado una moción de reconsideración dentro del término provisto para ello, a partir de la notificación del dictamen. Siendo así, esgrimió que el recurrido no podía solicitar al TPI que variara o aclarara su dictamen. Además, adujo que había demostrado el perfeccionamiento de un contrato verbal de sociedad entre las partes.

Ante esto, el 18 de febrero de 2025, el recurrido presentó dos escritos, a saber, una *Réplica a Oposición a Solicitud Aclaratoria y Vista Evidenciaria* y una *Oposición a Solicitud de Descalificación de Abogado*.[16] En esencia, expuso que su solicitud no constituía una solicitud de reconsideración, sino una de aclaración sobre la celebración de la vista para dilucidar la controversia de la existencia del contrato. Esto por cuanto lo anterior incidiría sobre la jurisdicción del tribunal. Además, señaló que la orden emitida el 5 de agosto de 2024 constituía parte de la Ley del Caso y no había sido objetada oportunamente por el señor de la Uz Colón.

Adicionalmente, el recurrido expuso que el señor de la Uz Colón no identificó en su solicitud cuáles eran los intereses adversos que implicaban la descalificación de la representación legal del recurrido.

---

[15] *Íd.,* Anejo 16, págs. 205-211.
[16] *Íd.,* Anejo 19 y 20, págs. 217-219 y 220-232.

Igualmente, arguyó que la solicitud era irrazonable dado que se desprende de las alegaciones que los intereses tanto del señor Pierce como los de las compañías, están totalmente alineados.

El 19 de febrero de 2025, el TPI emitió una *Resolución Interlocutoria* en la que denegó descalificar la representación legal del recurrido.[17] Por otro lado, ese mismo día emitió un dictamen intitulado *Orden: "Ruling y Calendarización."* [18] Allí, reiteró su intención de atender la controversia sobre la existencia del contrato, así como definir su naturaleza y determinar si carecía de jurisdicción para resolver el caso. En adición, ordenó a las partes que presentaran un Informe de Conferencia con Antelación a Juicio y señaló una Conferencia con Antelación a Juicio en la que se señalaría la Vista Evidenciaria.

Ante ello, el 6 de marzo de 2025, el señor de la Uz Colón presentó una *Moción de Reconsideración (Entrada Número 106)* en la que reiteró los planteamientos esbozados en su solicitud de descalificación.[19] Igualmente, ese mismo día presentó una *Moción de Reconsideración (Entrada Número 107)* y subrayó los fundamentos sobre la improcedencia de la solicitud de la Vista Evidenciaria toda vez que había demostrado que la relación contractual entre las partes era una por virtud del contrato de sociedad, el cual no contenía una cláusula de arbitraje que privara de jurisdicción al TPI.[20]

Ese mismo día, el foro de instancia emitió dos resoluciones interlocutorias.[21] En específico, denegó la solicitud de reconsideración del señor de la Uz Colón sobre la descalificación de los abogados del recurrido. Además, en cuanto a la solicitud de

---

[17] *Íd.,* Anejo 22, págs. 265-266.
[18] *Íd.,* Anejo 23, págs. 267-269.
[19] *Íd.,* Anejo 24, págs. 270-276.
[20] *Íd.,* Anejo 25, págs. 277-284.
[21] *Íd.,* Anejo 26 y 27, págs. 285-286 y 287-288. Archivadas y notificadas en autos el 7 de marzo de 2025.

reconsideración sobre la improcedencia de la solicitud de Vista Evidenciaria, el foro *a quo* dispuso lo siguiente:

> La Resolución dictada por este [T]ribunal no adjudica la existencia o no existencia del contrato en controversia. La misma reconoce que NO PROCEDE la desestimación del caso de autos en la etapa de los procedimientos en que la misma se presentó.
>
> En cuanto a la paralización de los procedimientos[,] este [T]ribunal entiende que, en la etapa procesal en [la] que nos encontramos al día de hoy, procede que se atienda la controversia en torno al contrato porque se est[á] cuestionando nuestra jurisdicción.
>
> A la [S]olicitud presentada por la parte demandante para que reconsideremos nuestra Orden del 19 de febrero de 2025[,] **RESOLVEMOS no ha lugar.**[22]

Inconforme, el señor de la Uz Colón acudió ante nos mediante el recurso que nos ocupa y le imputó al foro primario la comisión de los siguientes errores:

A. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL NO DESCALIFICAR LA REPRESENTACIÓN LEGAL UNITARIA DEL CODEMANDADO BROCK JEFFREY PIERCE Y DEMÁS CODEMANDADOS EN ESTE CASO, PESE A LA ARGUMENTACIÓN EN DERECHO QUE SUSTENTA DICHA DESCALIFICACIÓN VERTIDA POR LA PARTE RECURRENTE.

B. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL EMITIR SU ORDEN: "RULING" Y CALENDARIZACIÓN DEL 19 DE FEBRERO EN LA CUAL PONE EN TELA DE JUICIO SI, EN ESTE CASO, SE PERFECCIONÓ UN CONTRATO, QUÉ TIPO DE CONTRATO SE PERFECCIONÓ, CUANDO ELLO RESULTA INCOMPATIBLE CON SU RESOLUCIÓN FINAL Y FIRME DEL 16 DE DICIEMBRE DE 2024, QUE NO FUE OBJETO DE RECONSIDERACIÓN DE LA PARTE RECURRIDA.

C. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL NO AVALAR LAS RESPECTIVAS MOCIONES DE RECONSIDERACIÓN DE LA PARTE RECURRENTE EN CUANTO A LOS DICTÁMENES DE LA DESCALIFICACIÓN DE ABOGADO Y SOBRE LA ORDEN DEL 19 DE FEBRERO DE 2025 DEL FORO DE INSTANCIA.

En vista de los errores imputados, procedemos a discutir las normas jurídicas aplicables a este recurso.

---

[22] *Íd.,* a la pág. 287. (Subrayado y énfasis en el original).

**-II-**

**-A-**

El *certiorari* es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); véase, además, *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403-404, (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020), *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). En consecuencia, este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que este Tribunal posee autoridad para expedir el auto de *certiorari* sobre materia civil. S*cotiabank de Puerto Rico v. ZAF Corporation, et al.*, 202 DPR 478, 488 (2019). Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, prescribe los criterios que debemos tomar en consideración al momento de determinar si expedimos o denegamos el auto solicitado:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari*.

Por ser de particular pertinencia al presente asunto, cabe resaltar que en *Job Connection Center v. Econo*, 185 DPR 585 (2012), el Tribunal Supremo se enfrentó a la controversia de si las órdenes de descalificación de abogados decretadas por el Tribunal de Primera Instancia están contenidas entre las excepciones que confieren jurisdicción a este Tribunal para revisar órdenes o resoluciones interlocutorias bajo la antes referida Regla 52.1 de Procedimiento Civil. Tras enunciar la naturaleza, propósitos y procedencia de las determinaciones acerca de descalificaciones de abogados, el Tribunal Supremo concluyó que dichas determinaciones son revisables de forma interlocutoria mediante recurso de *certiorari* siempre y cuando se demuestre que hubo un craso abuso de discreción, prejuicio o parcialidad, o que el foro primario se equivocó en la interpretación o aplicación del derecho, y que la intervención revisora evitará un perjuicio sustancial. *Íd.,* a la pág. 602.

**-B-**

La jurisdicción es el poder o la autoridad que tienen los tribunales para considerar y resolver casos o controversias. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135 (2023); véase, además, *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc.*, 207 DPR 586, 600 (2021); *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 385 (2020); *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, 204 DPR 89, 101 (2020). Para adjudicar un caso ante sí, los tribunales deben ostentar jurisdicción sobre la materia y sobre la persona. *Advantage, Inc. v. Fossas Blanco, supra*, pág. 600; véase, además, *Shell v. Srio. De Hacienda*, 187 DPR 109, 122 (2012). La jurisdicción sobre la materia se refiere a la

capacidad de los tribunales para atender y resolver una controversia respecto a un aspecto legal. *MCS Advantage, Inc. v. Fossas Blanco, supra*; véase, además, *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico, supra*, pág. 101.

Siendo así, "**los tribunales tienen el deber ministerial, una vez cuestionada su jurisdicción, de examinar y evaluar rigurosamente el planteamiento jurisdiccional pues éste incide directamente sobre el poder mismo para adjudicar una controversia**." *SLG Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 883 (2007) (Énfasis nuestro).

**-C-**

Los foros de instancia gozan de amplia discreción en la tramitación de los casos ante su consideración para asegurar la más eficiente administración de la justicia, por lo que sus decisiones merecen gran deferencia. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 306-307 (2012); véase, además, *Vives Vázquez v. ELA*, 142 DPR 117, 143 (1996). Específicamente, la discreción que tiene un tribunal se refiere a su facultad para resolver de una forma u otra, o de escoger entre varios cursos de acción. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021); véase, además, *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010); *García v. Padró*, 165 DPR 324, 334 (2005). Así, la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019); véase, además, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 435 (2013); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). En efecto, la discreción "se nutre de un juicio racional . . . y fundamentado en un sentido

llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *SLG Zapata-Rivera v. JF Montalvo, supra.*

De ordinario, se respetan las medidas procesales que los jueces toman en el ejercicio prudente de su discreción para dirigir y conducir los procedimientos que ante ellos se siguen. Los jueces del TPI gozan de amplia discreción para gobernar esos procedimientos. *Lluch v. España Service Sta.*, 117 DPR 729 (1986); véase, además, *Fine Art Wallpaper v. Wolf*, 102 DPR 451 (1974). Gozan, además, de amplia facultad para disponer de los procedimientos ante su consideración de forma que se pueda asegurar la más eficiente administración de la justicia, y están llamados a intervenir activamente para manejar los procesos y dirigirlos de forma tal que se logre una solución justa, rápida y económica de los casos. *Vives Vázquez v. ELA, supra*; véase, además, *Vellón v. Squibb Mfg., Inc.*, 117 DPR 838 (1986).

En virtud de lo anterior, la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia. *Citibank et al. v. ACBI et al., supra*, pág. 735; véase, además, *Mejías et al. v. Carrasquillo et al., supra*, págs. 306–307. Por lo tanto, los tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por este en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. Gómez-López*, 213 DPR 314 (2023); véase, además, *VS PR, LLC v. Drift-Wind, supra*, pág. 273; *Umpierre Matos v. Juelle, Mejías*, 203 DPR 254, 275-276 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-D-**

Los tribunales están facultados para descalificar a abogados que participan en un caso para prevenir una violación a cualquiera de los Cánones de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito. *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 661 (2000). Sobre la descalificación como mecanismo para asegurar la adecuada marcha de un litigio, el Tribunal Supremo ha expresado que basándose en el deber de mantener el orden y el control de los procedimientos que se ventilan ante ellos, los tribunales inferiores tienen la facultad de descalificar abogados si ello resulta necesario para el logro del objetivo primordial de todo tribunal: la solución justa, rápida y económica de los pleitos.

En lo que respecta a la determinación de derecho que hace el tribunal de instancia al descalificar o no a un abogado, **se trata de una decisión impregnada del alto grado de discreción que tiene dicho foro en el manejo procesal de un caso**. *Íd.*, pág. 664. En palabras del Tribunal Supremo:

> Como es sabido, los tribunales apelativos no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción.
>
> *Íd.*

El Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21, dispone, en lo pertinente, que:

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> [...]
>
> Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.

Sobre el referido canon, el Tribunal Supremo ha expresado que "establece un deber de lealtad completa de parte del abogado que conlleva, entre otras cosas, evitar incurrir en conflictos de intereses." *In re Rivera Vicente,* 172 DPR 349, 359 (2007). Este conflicto de intereses supone tres (3) situaciones que deben ser evitadas:

> (1) [Q]ue en beneficio de un cliente se abogue por aquello a lo que el letrado debe oponerse en cumplimiento de sus obligaciones con otro cliente (representación simultánea adversa); (2) que un abogado acepte la representación de un cliente en asuntos que puedan afectar adversamente algún interés de un cliente anterior (representación sucesiva adversa); y (3) que un abogado acepte una representación legal, o continúe en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales.

*Íd.*

Sin embargo, y pertinente al presente caso, nuestro Máximo Foro ha resuelto que "los tratadistas de derecho corporativo han sido claros al expresar que, al igual que en el caso de las corporaciones tradicionales, un abogado puede representar tanto a la corporación como a su accionista mayoritario únicamente cuando los intereses de ambos no estén en conflicto." *Liquilux Gas Corp. v. Berríos*, 138 DPR 850, 863 (1995)

En casos como el que nos ocupa, donde la parte contraria es quien solicita la descalificación, el tribunal debe considerar si quien solicita la descalificación tiene legitimación activa para invocarla, la gravedad del conflicto de interés envuelto, la complejidad del derecho o los hechos pertinentes a la controversia y el "*expertise*" de los abogados envueltos, la etapa de los procedimientos en que surja la controversia sobre la descalificación y su posible efecto en cuanto a la resolución justa, rápida y económica del caso. También, debe considerar el propósito detrás de la descalificación, es decir, si la moción de descalificación está siendo utilizada como mecanismo procesal para dilatar los procedimientos. *Íd.* Al considerar esta serie de factores, el tribunal deberá sopesar, además, el derecho que le

asiste a todo ciudadano de escoger libremente el abogado que lo represente. *Sánchez Acevedo v. ELA,* 125 D.P.R. 432, 438 (1990).

A la luz de las normas jurídicas antes expuestas, procedemos a resolver.

**-III-**

En el presente caso, el señor de la Uz Colón solicita que revoquemos varios dictámenes en los que, en síntesis, el TPI denegó la descalificación de la representación legal del recurrido, así como la solicitud de reconsideración sobre el mismo asunto. En adición, el foro de instancia reafirmó su decisión de celebrar una Vista Evidenciaria para dilucidar la controversia jurisdiccional y rechazó la contención del peticionario en cuanto a que no existía tal controversia. Asimismo, declinó la solicitud de reconsideración sobre lo anterior.

Respecto a ello, el TPI expuso que la Resolución emitida el 16 de diciembre de 2024 no adjudicaba la existencia o inexistencia del contrato en controversia, sino que determinaba la improcedencia de la desestimación del caso en esa etapa procesal. Por consiguiente, el foro primario expresó que la Orden emitida el 19 de febrero de 2025 no era incompatible con la referida Resolución.

Luego de un análisis minucioso del expediente del caso, y en el ejercicio de nuestra discreción bajo la Regla 40, *supra,* declinamos la invitación del peticionario a intervenir con lo actuado por el foro primario.

En primer lugar, un examen del expediente revela que nos encontramos ante un asunto que corresponde al deber ministerial de los foros de instancia de dilucidar con premura los asuntos que puedan poner en entredicho su jurisdicción para resolver un caso en particular. *SLG Szendrey-Ramos v. F. Castillo, supra,* pág. 883.

Evidentemente, el peticionario parece indicar que no existe una controversia jurisdiccional toda vez que la denegatoria del foro

primario a la solicitud de desestimación del recurrido, fue una adjudicación sobre la existencia del contrato verbal de sociedad. No obstante, un análisis de las expresiones del propio tribunal en su Resolución, así como de la totalidad del expediente, refleja todo lo contrario.

La decisión de calendarizar la Vista Evidenciaria para dilucidar el perfeccionamiento del contrato verbal, o del contrato de servicios, es un ejercicio que el TPI, cual celoso custodio de su jurisdicción, llevó a cabo dentro de sus deberes ministeriales. *Íd.*, pág. 883.

Por otro lado, al considerar el recurso, así como la totalidad del expediente, observamos que, aun cuando el peticionario señala la violación del Canon 21 de Ética Profesional a la representación legal del recurrido, no identifica de manera particularizada cuáles y cómo los intereses del señor Pierce confligen con los de las entidades jurídicas de las cuales éste es único accionista y oficial. Siendo así, colegimos que el señor de la Uz Colón no puso en posición al TPI para determinar que procede la descalificación de la representación legal del recurrido.

En ausencia de fundamentos, y no habiendo una prohibición ética absoluta que impida que abogados representen tanto a las corporaciones como a los accionistas mayoritarios de éstas, *Liquilux Gas Corp. v. Berríos, supra*, entendemos que el TPI tampoco abusó de su discreción al denegar la descalificación de la representación legal del recurrido. Por consiguiente, declinamos, de igual forma, intervenir y sustituir su criterio en este asunto. *Mejías et al. v. Carrasquillo et al., supra*, págs. 306-307; véase, además, *Vives Vázquez v. ELA, supra*, pág. 143.

En resumen, después de una evaluación exhaustiva del expediente bajo nuestra consideración y de la normativa aplicable al caso, no encontramos razones que justifiquen intervenir con lo

actuado por el foro primario. En este recurso se ha solicitado la intervención de este Tribunal en asuntos interlocutorios que claramente recaen en la sana discreción del foro primario y en el ejercicio cabal de sus deberes ministeriales.

Considerada la norma reiterada a los efectos de que los foros apelativos no debemos interferir con el manejo del caso ante el foro de instancia salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial, y ante la ausencia de dichos elementos, procede abstenernos de interferir con lo adjudicado por el foro primario.

**-IV-**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado por el señor de la Uz Colón.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pagán Ocasio concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones