ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| SA POBLA INVESTMENTS, LLC<br><br>PETICIONARIO<br><br>v.<br><br>COSTA DEL SUR INVESTMENTS, LLC Y OTROS<br><br>RECURRIDOS | KLCE202301251 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2023CV05067<br><br>Sobre:<br>Cobro de dinero-ordinario-embargo, Ley de Corporaciones |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez

Ortiz Flores, Jueza Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de noviembre de 2023.

La parte peticionaria, SA Pobla Investments LLC, comparece mediante un recurso de *certiorari* y nos solicita que revoquemos una *Resolución* emitida y notificada el 22 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En el aludido dictamen, el foro primario denegó una solicitud de descalificación de la representación legal de la parte recurrida, GeodataPR International Inc., en referencia a Santiago Torres Law Offices LLC, el licenciado Edgardo Santiago Torres y el licenciado Rafael Rivera Rivera.

Adelantamos la denegación a la expedición del auto de *certiorari* solicitado.

**I**

El 26 de mayo de 2023, la parte peticionaria presentó una *Demanda* sobre cobro de dinero, embargo de bienes, ejecución de garantías y disolución de una empresa común,[1] al amparo del Artículo 9.03 de la Ley General de Corporaciones, en contra de Healthcare Ventures LLC, Costa

---

[1] La empresa común es la codemandada Healthcare Ventures LLC a quien, luego de dejarse sin efecto la anotación de rebeldía, se le designará un administrador judicial. Entradas 41, 49, 61 y 66 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

del Sur Investments LLC y GeodataPR International Inc.[2] Luego de diligenciar los respectivos emplazamientos,[3] el 30 de junio de 2023, GeodataPR compareció por conducto de su representación legal, conformada por el Lcdo. Santiago Torres de Santiago Torres Law Offices LLC y el Lcdo. Rivera Rivera, y solicitó una prórroga para presentar su alegación responsiva.[4] El TPI la concedió.[5]

Entonces, la parte peticionaria instó el 1 de agosto de 2023 una *Moción Solicitando Órdenes*. Entre otros remedios, solicitó la descalificación del Lcdo. Santiago Torres por la alegada violación del Canon 21 de Ética Profesional, *Intereses encontrados*, en la modalidad de **representación sucesiva adversa**, así como la descalificación del Lcdo. Rivera Rivera, conforme a la doctrina de **descalificación imputada**.[6] En síntesis, la parte peticionaria alegó que el Lcdo. Santiago Torres fungió como abogado de todos los asuntos de SA Pobla hasta su despido a inicios de 2023. Indicó que, luego de varias solicitudes a esos efectos, el 21 de abril de 2023, el Lcdo. Santiago Torres entregó el expediente de SA Pobla.[7] Añadió que este también diseñó y suscribió un documento atinente a la reclamación dineraria de autos, en alusión al *Memorando de Términos y Condiciones*. En cuanto al Lcdo. Rivera Rivera, adujo que le aplicaba la presunción de que los abogados comparten información confidencial.

El Lcdo. Santiago Torres[8] y el Lcdo. Rivera Rivera[9] presentaron sendos escritos judiciales en los que se opusieron a la descalificación. En particular, el Lcdo. Santiago Torres indicó que no había conflicto de interés alguno, ya que se había limitado a realizar el registro e inscripción de SA Pobla ante el Departamento de Estado de Puerto Rico y a tramitar su cumplimiento con el Departamento de Hacienda, mediante la presentación

---

[2] Apéndice, págs. 1-16 con anejos a las págs. 17-55.
[3] Apéndice, págs. 56-61.
[4] Apéndice, págs. 62-63.
[5] Entrada 12 SUMAC.
[6] Apéndice, págs. 113-135.
[7] Surge del expediente que el Lcdo. Santiago Torres también entregó el expediente de FC Investment Holdings LLC.
[8] Apéndice, págs. 137-155, con anejo a las págs. 156-158.
[9] Apéndice, págs. 159-165.

de derechos anuales y planillas. Afirmó que dichos asuntos concretos no conllevaron conocer asuntos internos de la entidad jurídica, la cual estuvo inoperante entre 2018 y los inicios de 2021. Con relación al expediente de la parte peticionaria en su poder, señaló que solo contenía documentos relacionados con el registro de la entidad corporativa; a saber: la información de incorporación y registro en el Departamento de Estado, la carta y notificación sobre el seguro social patronal, el registro de comerciante, los "By-Laws", un "Operating Agreement", el Libro Corporativo, el pago de derechos anuales y la presentación de planillas de entidad inoperante, para el cumplimiento con el Código de Rentas Internas. Igualmente, expresó que ni él ni Santiago Torres Law Offices LLC habían representado al peticionario en ningún procedimiento judicial —ya fuere de jurisdicción voluntaria o de naturaleza adversativa— ante un foro judicial o administrativo. Al entender que SA Pobla incumplió con los requerimientos en Derecho para sostener sus alegaciones sobre conflicto ético, el Lcdo. Santiago Torres solicitó la imposición de honorarios de abogado por concepto de temeridad. Por su parte, el Lcdo. Rivera Rivera se unió a los fundamentos esbozados antes y rechazó la procedencia del pedimento. Asimismo, resaltó la ausencia de evidencia de SA Pobla para apoyar sus imputaciones sobre las supuestas violaciones al Canon 21 de Ética Profesional. Aclaró también que no trabajaba en el bufete del Lcdo. Santiago Torres ni había representado legalmente a SA Pobla en ningún asunto. Aseveró que no existía confidencia o secreto alguno de SA Pobla que el Lcdo. Santiago Torres pudiera conocer o compartir.

Atendidos los escritos presentados, el 22 de agosto de 2023, el foro *a quo* notificó la *Resolución* recurrida, mediante la cual declaró no ha lugar la solicitud descalificadora.[10] Este dictamen fue objeto de una oportuna *Moción de Reconsideración.*[11] En lo que nos compete, SA Pobla adujo que

---

[10] Apéndice, pág. 166. El tribunal recurrido también apercibió a los representantes legales de su "deber de preservar la dignidad de los procedimientos judiciales mediante la aplicación de normas de urbanidad y respeto mutuo."

[11] Apéndice, págs. 167-182, con anejos a las págs. 183-225.

Santiago Torres Law Offices preparó el "Operating Agreement" y los "By-Laws" de SA Pobla y brindó asesoramiento al ente corporativo en torno a un contrato de servicios y a la apertura de cuentas bancarias. Del mismo modo, por primera vez, señaló varios asuntos en los que el Lcdo. Santiago Torres supuestamente intervino, los cuales vinculaban al licenciado Fermín Fracinetti Rivas, administrador de SA Pobla, a su esposa, la doctora Yolanda Capó Fernández, a la sociedad conyugal que estos conforman y al hijo de ambos.[12] Aludió a la "presunta representación de Healthcare y/o Geodata en [la] preparación de borradores y [en la] negociación" del *Memorando de Términos y Condiciones*. Mencionó la intervención del Lcdo. Santiago Torres en la preparación de documentos corporativos y asesoría contributiva ante el CRIM de Sampierdarena Investments LLC, accionista minoritaria de GeodataPR en un 30%. En fin, arguyó sobre lo impermisible de permitir que los recurridos contrainterroguen al Lcdo. Fracinetti Rivas "en cualquier contexto" ya que causaría un "perjuicio irreparable."[13] SA Pobla insistió en la descalificación del Lcdo. Santiago Torres y en la descalificación vicaria del Lcdo. Rivera Rivera.

El Lcdo. Santiago Torres replicó.[14] Luego de cuestionar los nuevos asuntos no esgrimidos antes, reiteró que SA Pobla no demostró que la representación legal de la parte recurrida haya intervenido en cuestiones sustancialmente relacionadas con las controversias planteadas en la *Demanda* de marras. Aclaró que la llamada "asesoría" constó de tramites

---

[12] SA Pobla adujo que el Lcdo. Santiago Torres asesoró al Lcdo. Fracinetti Rivas en posibles reclamaciones judiciales sobre cobro de dinero, asuntos contributivos y en el manejo del pleito *Habibe v. Fracinetti*. Además, dijo que participó en unos procesos puntuales al examinar el expediente del hijo del Lcdo. Fracinetti Rivas en un pleito de daños y asistió al yerno del Lcdo. Fracinetti Rivas, Lcdo. Luis González, en unos trámites ante el Pentagon Federal Credit Union. Dijo que el recurrido realizó también investigaciones jurídicas y preparó pagarés. En cuanto a la Dra, Capó Fernández, se indicó que el Lcdo. Santiago Torres preparó formularios jurados, ofreció asesoría contributiva y participó en acciones sobre cambio de nombre y restitución de pagaré.

[13] La parte peticionaria citó, además, el Canon 22 de Ética Profesional, *Abogado como testigo*, en referencia a unas alegadas expresiones verbales y escritas extrajudiciales del Lcdo. Santiago Torres relacionadas con la entrega de un pagaré. En respuesta, el Lcdo. Santiago Torres apostilló que no existía ninguna controversia que lo pudiera convertir en un testigo del caso, ya que los contendientes habían admitido la inexistencia de un pagaré. Aclaró que el alegado "pagaré" se trata del mismo *Memorando de Términos y Condiciones*, que SA Pobla denomina *Contrato de Financiamiento*.

[14] Apéndice, págs. 226-235.

de índole contributiva, en los que se limitó a gestionar las declaraciones y planillas conforme al cumplimiento de Ley. Indicó que la relación abogado-cliente con SA Pobla y las otras personas naturales y jurídicas mencionadas fue ocasional, limitada y concerniente a asuntos determinados. Es decir, la información necesaria para realizar dichas gestiones fue específica y no requirió la compenetración en los asuntos internos de SA Pobla, más allá de conocer los datos concretos necesarios para la gestión particular que se le encomendó. Ratificó no haber representado legalmente al ente corporativo en ninguna controversia relacionada con el pleito del título. Acerca de los documentos presentados por la parte peticionaria (facturas y correos electrónicos), el Lcdo. Santiago Torres explicó que de estos no surgía evidencia de un conflicto de interés, por lo que no cabía hablar de una representación sucesiva adversa y, por ende, tampoco de la descalificación imputada.

La petición de reconsideración fue denegada mediante *Resolución* emitida y notificada el 11 de octubre de 2023. Insatisfecha, la parte peticionaria acudió a tiempo ante este Tribunal de Apelaciones mediante el presente recurso de *certiorari* y señaló los siguientes errores:

> ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA PETICIÓN DE DESCALIFICACIÓN DE ABOGADOS DE SA POBLA YA QUE DE SU FAZ SE DESPRENDE QUE EL LCDO. SANTIAGO TORRES VIOLÓ EL CANON 21 DE LOS CÁNONES DE ÉTICA PROFESIONAL.
>
> ERRÓ EL TPI AL NO CONSIDERAR LA EVIDENCIA PROVISTA EN LA MOCIÓN DE RECONSIDERACIÓN.
>
> ERRÓ EL TPI AL ACOGER LOS FUNDAMENTOS DE LA RÉPLICA DE GEODATA PUES INDUDABLEMENTE LOS MIEMBROS DE UN MISMO BUFETE DE ABOGADOS COMPARTEN CONFIDENCIAS E INFORMACIÓN RELEVANTE SOBRE LAS REPRESENTACIONES LEGALES QUE SUSTENTAN.

En armonía con la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), mediante la cual este foro revisor puede "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos", ello "con el propósito de lograr

su más justo y eficiente despacho", eximimos a la parte recurrida de presentar su alegato en oposición.

**II**

**A.**

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders v. BBVAPR*, 185 DPR 307, 337-338 (2012), que cita a: *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *IG Builders v. BBVAPR, supra*. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). En específico, la Regla 52.1 dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión**. […] (Énfasis nuestro.)

De acuerdo con la anterior disposición legal y la jurisprudencia interpretativa, nos corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari.* Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida

dentro de uno de los asuntos específicos establecidos en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué materias, solamente, se podrá expedir el auto de *certiorari*. En aquellos en los que la materia no esté comprendida dentro de la regla, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

A su vez, los foros apelativos "no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, perjuicio, error manifiesto o parcialidad." *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Asimismo, con relación a determinaciones interlocutorias discrecionales procesales, no debemos sustituir nuestro criterio por el ejercicio de discreción del tribunal

de instancia, "salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción." *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 664 (2000). Finalmente, la norma procesal apunta expresamente que, al denegar la expedición de un auto de *certiorari* de acuerdo con la Regla 52.1, este Tribunal no tiene que fundamentar su decisión.

**B.**

La Regla 9.3 de las de Procedimiento Civil, *supra*, dispone en lo pertinente al recurso ante nosotros lo siguiente:

> […] El tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y [las] abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza, o **descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia** o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as). (Énfasis nuestro.)

Es decir, "[l]os tribunales de instancia tienen la facultad de ordenar [*motu proprio*] la descalificación de un abogado" y "[t]ambién pueden otorgarla accediendo a una solicitud de parte." *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 661 (2000). En *Job Connection Center, Inc. v. Supermercados Econo*, 185 DPR 585 (2012), el Tribunal Supremo interpretó la norma de descalificación de los abogados como sigue:

> Los procedimientos disciplinarios por violación a los Cánones de Ética Profesional el abogado se expone a una sanción o penalidad. Aunque en el caso de una descalificación no se expone a esto, la realidad es que **la descalificación de un abogado afecta negativamente varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos**. En consideración a lo anterior, **una descalificación es un remedio que no debe imponerse ligeramente**. **Esta solo debe proceder cuando sea estrictamente necesario, por considerarse un remedio drástico que debe ser evitado si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes**. El tribunal deberá realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial. (Énfasis nuestro.) *Id.*, págs. 596-597.

En los casos en que una parte "solicita la descalificación de un representante legal, la mera presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión" pues corresponde al tribunal "hacer un análisis de la totalidad de las circunstancias", a base de los siguientes factores:

(1) si quien solicita la descalificación tiene legitimación activa para invocarla;

(2) la gravedad de la posible violación ética involucrada;

(3) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados;

(4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y

(5) el propósito detrás de la descalificación, es decir, si la moción está siendo utilizada como mecanismo para dilatar los procedimientos. *Job Connection Center, Inc. v. Supermercados Econo, supra,* págs. 597-598 que cita a *Otaño v. Vélez*, 141 DPR 820, 828 (1996) (*Per Curiam*) y *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 865 (1995).

"El juez que atiende una moción de descalificación debe analizar si la continuación de la representación legal le causaría un perjuicio o desventaja indebida en el caso a quien la solicita" y "deberá brindar la oportunidad al representante legal, cuya descalificación está siendo solicitada, para que se exprese." *Job Connection Center, Inc. v. Supermercados Econo, supra*, pág. 598. El criterio rector es "si al abogado representar los intereses de un cliente en un caso, la representación posterior de otro cliente en uno **relacionado sustancialmente** con el primero puede entenderse como un cambio de lado." *P. R. Fuels, Inc., v. Empire Gas Company, Inc.*, 133 DPR 112, 119 (1993).

En cuanto a la doctrina de descalificación imputada o vicaria, se refiere a aquella que recae sobre un bufete completo o un grupo de abogados debido a la previa descalificación de uno o más de sus miembros por razón de un conflicto de intereses. La descalificación vicaria se basa en el supuesto de las confidencias compartidas entre los abogados de un

bufete. Por tanto, la evaluación de la descalificación vicaria implica una serie de intereses que deben sopesarse y que están presentes en contextos muy diversos. *P. R. Fuels, Inc., v. Empire Gas Company, Inc.*, *supra*, pág. 120. "Los intereses primordiales lo constituyen la protección de las confidencias del cliente y el ejercicio de un criterio profesional independiente, pero no pueden menospreciarse los intereses que compiten con estos: **la movilidad de los abogados en el mercado de empleos y los posibles efectos perjudiciales para la parte cuyo abogado es descalificado**." (Énfasis nuestro.) *Id.*

**III**

En sus señalamientos de error, la parte peticionaria aduce que el Tribunal de Primera Instancia incidió al denegar su petición de descalificar al Lcdo. Santiago Torres y al Lcdo. Rivera River al afirmar que el primero violó el Canon 21 y, sin duda, los miembros del mismo bufete comparten las confidencias de sus clientes. Aduce también que el foro primario erró al no sopesar la evidencia sometida en la etapa de reconsideración. A tales efectos, solicita la revocación del dictamen, la descalificación de los recurridos o, en la alternativa, la celebración de una vista evidenciaria.

Por tratarse de un recurso de *certiorari* nos corresponde evaluar si el asunto ante nuestra consideración versa sobre alguna de las materias contenidas en la Regla 52.1 de Procedimiento Civil, *supra*. Ciertamente, el presente recurso podría incidir sobre una de las materias incluidas en la Regla 52.1, entiéndase, "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia", por lo que podríamos ostentar jurisdicción bajo dicha disposición legal.[15]

---

[15] Una solicitud de descalificación de representación legal procedente en Derecho no concedida o una descalificación incorrectamente aplicada podrían incidir en aquella materia de la Regla 52.1 que alude a "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia," por las repercusiones y menoscabos de derechos que pudiese ocasionar el no revisar órdenes de descalificaciones o sus denegatorias, ya que la apelación sería un remedio infructuoso. Por ello, el Tribunal Supremo ha resuelto que estas controversias podrían ser revisables de conformidad con la Regla 52.1 de Procedimiento Civil, *supra*. Véase, *Job Connection Center v. Sup. Econo*, 185 DPR 585, 599-601 (2012).

No obstante, superada esta etapa, debemos realizar la segunda parte del análisis, es decir, si conforme la discreción concedida a este Tribunal revisor mediante la Regla 40, debemos expedir o no el auto de *certiorari*. Respondemos en la negativa. Luego de evaluar el expediente ante nuestra consideración, así como la *Resolución* recurrida, resolvemos conferir deferencia al foro primario en su determinación. Al no descalificar a los recurridos, el tribunal *a quo* justipreció que la *Demanda* del epígrafe no está sustancialmente relacionada con las intervenciones puntuales del Lcdo. Santiago Torres en determinados asuntos específicos de la parte peticionaria. Por ende, coligió como igualmente improcedente argüir sobre la doctrina de descalificación vicaria.

En este caso, no encontramos fundamento alguno que nos lleve a concluir que la primera instancia judicial haya abusado de su discreción o que haya aplicado el Derecho de forma errada o actuado de manera arbitraria, con pasión, prejuicio o parcialidad al denegarle a la parte peticionaria la descalificación de los recurridos. Siendo ello así y en ausencia de alguno de los criterios contemplados en la Regla 40 del Reglamento del Tribunal de Apelaciones, no se justifica nuestra intervención. En consecuencia, procedemos a denegar la expedición del auto de *certiorari* solicitado.

**IV**

Por los fundamentos antes expuestos, denegamos la expedición del auto de *certiorari* solicitado.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones