Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| IRAM RAMÍREZ LINARES<br><br>*Peticionario*<br><br><br>v.<br><br><br><br>SERVIDORES PÚBLICOS UNIDOS/CONCILIO 95<br><br>*Recurrido* | TA2025CE00121 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV02381 Sala:506<br><br>Sobre: Incumplimiento de Contrato; Represalias; Daño a la Reputación |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de agosto de 2025.

Comparece ante nos, el señor Iram Ramírez Linares (señor Ramírez o peticionario) y nos solicita la revocación de la *Resolución*[1], emitida el 9 de junio de 2025[2] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Solicitud Orden Descalificación*[3] presentada por el peticionario.

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *Certiorari* y **confirmamos** la *Resolución* recurrida.

**I.**

La génesis del caso de autos ocurrió cuando el 11 de marzo de 2024, el señor Ramírez instó una *Demanda por Incumplimiento de Contrato*[4] en contra de Servidores Públicos Unidos/Concilio 95

---

[1] Apéndice 67 del recurso de *Certiorari.*
[2] Notificada el 10 de junio de 2025.
[3] Apéndice 46 del recurso de *Certiorari.*
[4] Apéndice 1 del recurso de *Certiorari.*

(SPU/Concilio 95 o recurrido). En la misma, también se incluyeron las causas de acción de represalias, daños a la reputación y honorarios de abogado por temeridad. Por su parte, el 19 de julio de 2024, el recurrido presentó *Contestación a Demanda*[5]. En esta, solicitó que se declarara *No Ha Lugar* la Demanda presentada por el peticionario.

Luego de varios trámites procesales, el 25 de enero de 2025, el señor Ramírez sometió una *Solicitud Orden Descalificación* mediante la cual solicitó la descalificación del licenciado Edwin Rivera Cintrón (Lcdo. Rivera)[6]. En la solicitud, el peticionario arguyó que, mientras fue Director Ejecutivo de SPU/Concilio 95, el Lcdo. Rivera fue su confidente y advino en conocimiento de información sensitiva y privilegiada. Por lo tanto, el señor Ramírez presentó la solicitud de descalificación, por entender que existía conflicto de intereses y apariencia impropia por parte del Lcdo. Rivera. Esto, debido a que este último era conocedor de hechos y controversias que el peticionario tuvo con la señora Jessica Martínez Santos (señora Martínez), Presidenta de Servidores Públicos, por lo que su contrato fue rescindido. Asimismo, alegó que el Lcdo. Rivera era parte del litigio y podía ser llamado a testificar durante el juicio en su fondo.

En respuesta a tal solicitud, el 11 de febrero de 2025, SPU/Concilio 95 presentó su *Réplica a "Solicitud Orden Descalificación" {sic} presentada por la parte Demandante*[7]. En esta, el recurrido adujo que la solicitud de descalificación estaba basada en meras alegaciones y generalidades que no estaban sustentadas con evidencia. Igualmente, arguyó que el Lcdo. Rivera no era parte

---

[5] Apéndice 16 del recurso de *Certiorari*.
[6] El peticionario, durante el contrato con la SPU/Concilio 95 compartió con el Lcdo. Rivera confidencias, quejas, querellas y reclamaciones laborales que se suscitaron mientras él era Director Ejecutivo del Gremio Sindical. Véase, Apéndice 46 del recurso de *Certiorari*.
[7] Apéndice 52 del recurso de *Certiorari*.

del litigio y que la alegación que hizo el peticionario de llamar a testificar al letrado no procedía. Finalmente, SPU/Concilio 95 indicó que el propósito de la solicitud era la dilación de los procedimientos.

Por su lado, el 24 de febrero de 2025, el señor Ramírez sometió *Réplica a Oposición a Solicitud Orden Descalificación*[8] en la cual reiteró lo expuesto anteriormente.

Evaluada las posiciones de las partes, el 9 de junio de 2025[9], el foro recurrido emitió una *Resolución* en la cual declaró *No Ha Lugar* la petición de descalificación del Lcdo. Rivera.

Inconforme con la determinación, el 9 de julio de 2025, el señor Ramírez acudió ante nos mediante el recurso de epígrafe y le imputó al TPI la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESATENDER LOS HECHOS DE ESTE CASO, Y NO DESCALIFICAR AL LCDO. EDWIN RIVERA CINTRÓN.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO OBEDECER EL MANDATO CLARO Y PRECISO DE LOS CÁNONES DE ÉTICA DE LA PROFESIÓN LEGAL, Y NO DESCALIFICAR AL LCDO. EDWIN RIVERA CINTRÓN.

Luego de solicitar una prórroga, el 8 de agosto de 2025, SPU/Concilio 95 presentó su *Alegato en Oposición a Recurso de Certiorari*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[10]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada

---

[8] Apéndice 59 del recurso de *Certiorari*.

[9] Notificada el 10 de julio de 2025.

[10] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

dentro de la discreción judicial[11]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[12]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[13].

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones[14], señala los criterios que para ello debemos considerar. Éstos son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

---

[11] *Íd.*

[12] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra,* pág. 91.

[13] *Íd.*

[14] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. __, 215 DPR __ (2025).

**-B-**

El Canon 21 del Código de Ética Profesional[15], dispone que el abogado tiene para con su cliente un deber de lealtad completa, la cual se divide en dos (2) aspectos: (1) ejercer un criterio profesional independiente y desligado de sus propios intereses, y (2) no divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes[16]. El deber de lealtad completa que tiene todo abogado para con su cliente, que consiste en el deber de no revelar confidencias que su cliente haya compartido, prohíbe que un abogado incurra en una representación simultánea o sucesiva adversa[17]. Ahora bien, lo anterior no quiere decir que un abogado no pueda representar simultánea o sucesivamente a dos (2) clientes en asuntos similares[18]. La norma es que un abogado no puede representar a un cliente en una controversia que esté sustancialmente relacionada a la de otro cliente actual o anterior cuando los intereses de ambos sean adversos[19].

Así, un abogado está impedido de asumir la representación simultánea o sucesiva de dos clientes, independientemente de la aprobación otorgada por estos, cuando entre ambas representaciones exista una relación sustancial que implique intereses adversos[20]. Respecto al criterio de la relación sustancial, el cliente tiene que demostrar que la controversia legal involucrada en el pleito en la que el abogado comparece en su contra está relacionada sustancialmente con la materia o causa de acción en la que tal abogado lo representa o lo representó[21]. En esos casos, el

---

[15] 4 LPRA Ap. IX, C. 21.
[16] *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 857-858 (1995).
[17] *Íd.*, págs. 858-859.
[18] *Íd.*, págs. 859.
[19] *Íd.*, citando a *Developments in the Law: Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1295-1296 (1981).
[20] *Otaño v. Vélez*, 141 DPR 820, 826 (1996).
[21] *Íd.*, pág. 827.

cliente no tiene que probar la existencia de una violación al principio de confidencialidad, pues es suficiente que demuestre la existencia de una relación previa de abogado y cliente, la relación sustancial vigente entre ambas representaciones conflictivas y el efecto adverso que surge de la representación dual de ellas[22].

Por otra parte, el Canon 38 del Código de Ética Profesional dispone, en lo pertinente, que "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia..."[23]. En *In re Báez Genoval*, 175 DPR 28, (2008) el Tribunal Supremo de Puerto Rico tuvo la oportunidad de delimitar la relación entre los Cánones 21 y 38 del Código de Ética Profesional. En esa oportunidad, resolvió que "cuando un abogado asume una representación simultánea de clientes o una representación sucesiva adversa que resulta en un real o potencial conflicto de intereses, incurre en una conducta que viola los Cánones 21 y 38 del Código de Ética Profesional"[24].

Cónsono con lo anterior, no albergamos duda de que una violación al Canon 21 del Código Ética Profesional, *supra,* conlleva necesariamente una violación al Canon 38, *supra*. Sin embargo, ante una solicitud de descalificación lo que debe dirimir el tribunal es si, a la luz de la totalidad de las circunstancias y los factores a ser considerados de conformidad con nuestro ordenamiento jurídico y esbozados anteriormente, existe una apariencia de conducta impropia que justifique la descalificación de un abogado y sopesar el derecho que le asiste a todo ciudadano de escoger libremente el abogado que lo represente.

---

[22] *Íd.*
[23] 4 LPRA Ap. IX, C. 38.
[24] *Íd.*, pág. 39.

En cuanto a la Regla 9.3 de las de Procedimiento Civil[25], la misma establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los miembros de la profesión legal que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. Acorde con lo anterior, el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello aporte a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos[26]. Por lo tanto, una orden de descalificación puede proceder, ya sea para prevenir violaciones al Código de Ética Profesional o para evitar conductas disruptivas de los abogados o abogadas durante el trámite de un pleito. Ahora bien, la descalificación se considera un remedio drástico que se debe evitar ante la existencia de remedios menos onerosos que aseguren la integridad del proceso judicial y el trato justo de las partes[27]. Por tal razón, los tribunales deben realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial[28].

Una descalificación puede ser ordenada motu proprio por el tribunal o, puede ser solicitada, por una parte[29]. En los casos en que el tribunal ordene la descalificación motu proprio no es necesario que aporte prueba sobre una violación ética, ya que la apariencia de impropiedad justifica la descalificación[30]. Por otro lado, cuando es una parte la que solicita la descalificación de un

---

[25] 32 LPRA Ap. V, R. 9.3.
[26] *ORIL v. El Farmer Inc.,* 204 DPR 229, 241 (2020); *Job Connection Center v. Sups. Econo,* 185 DPR 585, 596 (2012); *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 660 (2000).
[27] *Job Connection Center v. Sups. Econo, supra,* pág. 597.
[28] *Íd.*
[29] *Meléndez v. Caribbean Int'l. News, supra,* pág. 661.
[30] *Íd.*

representante legal, la mera presentación de la solicitud no conlleva la concesión automática de la petición[31]. En estos casos, el tribunal deberá hacer un análisis de la totalidad de las circunstancias de acuerdo con los siguientes factores:

> (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción está siendo utilizada como mecanismo para dilatar los procedimientos[32].

El juzgador de hechos podrá denegar una solicitud de descalificación presentada por una parte adversa si entiende que esta ha sido interpuesta como una táctica dilatoria del procedimiento[33]. También podrá ser denegada en instancias donde la solicitud sea considerada frívola o cuando se presenta con el propósito de intimidar a la parte adversa[34]. Cuando el tribunal atiende una moción de descalificación deberá analizar si la continuación de la representación legal podría causarle perjuicio o una desventaja indebida en el caso a su solicitante[35]. Asimismo, deberá sopesar el derecho que le asiste a toda persona de escoger con libertad su representación legal[36].

-C-

La Ley Núm. 164-2009[37], conocida como la Ley General de Corporaciones, según enmendada, es el estatuto que dispone las pautas generales que regulan el sistema corporativo en nuestro ordenamiento jurídico. Como es sabido, las corporaciones poseen personalidad jurídica distinta y separada de la de sus dueños[38]. Ello

---

[31] *Job Connection Center v. Sups. Econo, supra*, pág. 597.
[32] *Íd.*
[33] *Íd.*, págs. 597-598.
[34] *Íd.*, pág. 598.
[35] *ORIL v. El Farmer Inc., supra*, pág. 243.
[36] *Íd.*
[37] 14 LPRA sec. 3501 *et seq.*
[38] C.E. Díaz Olivo, *Corporaciones*, San Juan, Pubs. Puertorriqueñas, 2005, págs. 11-12.

implica que, sus socios o accionistas, ordinariamente, no responden en su carácter personal por las deudas y obligaciones de la entidad[39]. Además, las corporaciones están facultadas para demandar, ser demandada, comprar, vender, arrendar, adquirir o ceder bienes muebles o inmuebles, llevar a cabo sus negocios y operaciones, otorgar contratos e incurrir en responsabilidades[40].

Referente a la controversia que nos ocupa, las entidades corporativas necesitan de ciertos instrumentos o agentes, en particular los directores y oficiales, para desarrollar las actividades necesarias para alcanzar sus objetivos[41]. Sin embargo, al actuar en representación de la corporación, los directores y oficiales no se obligan personalmente, sino que obligan a la entidad[42]. **Esto quiere decir que las corporaciones tienen una personalidad jurídica distinta y separada de la de sus dueños, accionistas, miembros, directores u oficiales**[43]. (Énfasis nuestro).

### III.

Las circunstancias particulares de este caso justifican que ejerzamos nuestra discreción y expidamos el recurso para confirmar al TPI. A nuestro juicio, nuestra intervención es oportuna y adecuada. Veamos.

En el presente recurso, el señor Ramírez solicitó la revocación de la determinación del TPI, mediante la cual denegó su *Solicitud Orden Descalificación*. En síntesis, el peticionario indicó que, mientras fue Director Ejecutivo de SPU/Concilio 95, el Lcdo. Rivera fue su confidente y advino en conocimiento de información sensitiva y privilegiada. Por ello, considera que existe un conflicto de intereses

---

[39] Arts. 1.02 (b)(5) y 12.04 (b) de la Ley Núm. 164-2009, 14 LPRA secs. 3502 y 3784.
[40] Art. 2.02 de la Ley Núm. 164-2009, 14 LPRA sec. 3522
[41] Véase, Carlos E. Díaz Olivo, *Corporaciones*, Puerto Rico, Publicaciones Puertorriqueñas, Inc., 1999, pág. 76.
[42] *Íd.*, pág. 275.
[43] *Miramar Marine v. Citi Walk*, 198 DPR. 684, 691 (2017), que cita a Díaz Olivo, *Corporaciones: Tratado sobre derecho corporativo*, Colombia, [s. Ed.], 2016, págs. 2 y 45; M. Muñoz Rivera, *Ley de Corporaciones de Puerto Rico: análisis y comentarios,* 1ra ed., San Juan, Ed. Situm, 2015, pág. 7.

y apariencia impropia por parte de dicho abogado, debido a que este último era conocedor de hechos y controversias que el peticionario tuvo con la señora Martínez, razón por la cual su contrato fue rescindido. Asimismo, alegó que el Lcdo. Rivera era parte del litigio y podía ser llamado a testificar durante el juicio en su fondo.

Por su parte, el recurrido adujo que la solicitud de descalificación estaba basada en meras alegaciones y generalidades que no estaban sustentadas con evidencia. Igualmente, arguyó que el Lcdo. Rivera no era parte del litigio y que la alegación que hizo el peticionario de llamar a testificar al letrado no procedía. Igualmente, indicó que el propósito de la solicitud era la dilación de los procedimientos.

El Tribunal Supremo dispuso que, al evaluar una solicitud de descalificación, el foro primario habrá de hacer un análisis de la totalidad de las circunstancias y verificar si se cumplen con los factores reseñados en la jurisprudencia[44]. Al repasar los factores exigidos por nuestra más Alto Foro razonamos que el peticionario incumplió con probar la posible violación ética involucrada. En ese sentido, nos resulta correcto el análisis esbozado por el foro recurrido, al determinar que no implica un conflicto ético el hecho de que el Lcdo. Rivera continúe con la representación legalmente al recurrido.

Como adelantamos en la exposición del derecho, **las corporaciones tienen una personalidad jurídica distinta y separada de la de sus dueños, accionistas, miembros, directores u oficiales**[45]. Por consiguiente, conforme al derecho aplicable, aun cuando el señor Ramírez fungía como Director de SPU/Concilio 95,

---

[44] *Job Connection Center v. Sups. Econo, supra*, págs. 597-598 y *Otaño v. Vélez, supra*, pág. 829.

[45] *Miramar Marine v. Citi Walk, supra,* pág. 691, que cita a Díaz Olivo, *Corporaciones: Tratado sobre derecho corporativo*, Colombia, [s. Ed.], 2016, págs. 2 y 45; M. Muñoz Rivera, *Ley de Corporaciones de Puerto Rico: análisis y comentarios,* 1ra ed., San Juan, Ed. Situm, 2015, pág. 7.

la personalidad jurídica de dicha entidad era distinta a la de él. Por lo que, el deber de lealtad que se le impone a los abogados para con sus clientes solo afecta al Lcdo. Rivera en su representación hacia SPU/Concilio 95 y no con el peticionario en su carácter personal. Es decir, el mero hecho de que en algún momento este fuera director de la corporación y el Lcdo. Rivera fuera abogado de la misma para esa época, no implica que ahora debemos aplicar la doctrina sobre la representación sucesiva adversa.

Por otro lado, el señor Ramírez no ha presentado evidencia ni ha detallado qué información adquirió el Lcdo. Rivera durante su representación legal de SPU/Concilio 95 mientras él fungía como Director, que le pueda ser adverso al peticionario en el caso de autos.

Esbozado lo anterior, concluimos que la solicitud de descalificación presentada por el señor Ramírez, está basada en meras alegaciones y generalidades que no están sustentadas en prueba fehaciente. Por ende, determinamos que el peticionario no ha puesto a este tribunal apelativo intermedio en la posición de concluir que existe un conflicto de intereses por representación sucesiva adversa. Así pues, analizado el expediente ante nuestra consideración, y al examinar el proceder del foro recurrido, no identificamos que se haya excedido en el ejercicio de su discreción, actuado de manera arbitraria o errado en la aplicación del derecho.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, ***expedimos*** el auto de *Certiorari* y ***confirmamos*** la *Resolución* recurrida, emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones