ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| JENNIFER SERRANO AYALA Y OTROS<br><br>Peticionaria<br><br>v.<br><br>VICTORIA SANDOVAL BURGOS<br><br>Recurrida | TA2026CE00402 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: GB2025CV00708<br><br>Sobre: Ley General de Corporaciones; Daños y Perjuicios; Violación del Deber Fiduciario; Fraude Contractual |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de abril de 2026.

Comparece Jennifer Serrano Ayala ("señora Serrano Ayala" o "Peticionaria") mediante *Petición de Certiorari* y nos solicita que revisemos una *Resolución y Orden* emitida el 17 de febrero de 2026, notificada el 18 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). En virtud del aludido dictamen, el TPI descalificó al abogado de la peticionaria, el licenciado Omar G. Monefeldt Rondón ("Lcdo. Monefeldt Rondón"), por infringir el Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21, al incurrir en una representación simultánea adversa.

Por los fundamentos que proceden, se *deniega* la expedición del auto de *certiorari* solicitado.

**I.**

El 12 de agosto de 2025, la señora Ayala Serrano y Kalos Salon, LLC ("Kalos Salon"), representados por el Lcdo. Monefeldt Rondón, presentaron una *Demanda* sobre daños y perjuicios, fraude contractual y violación al deber fiduciario en contra de Victoria Sandoval Burgos ("señora Sandoval Burgos" o "Recurrida"). Señalaron que la señora Sandoval Burgos y la señora Ayala

Serrano poseen, respectivamente, un 50% de la participación en Kalos Salon. En síntesis, alegaron que la señora Sandoval Burgos, mediante una serie de actos, violó su deber fiduciario, al presuntamente actuar en contra de los mejores intereses de Kalos Salon. Asimismo, sostuvieron que, como resultado de dichos actos, la señora Serrano Ayala sufrió daños económicos, daños a su reputación, así como daños morales y angustias mentales. Por todo lo cual, solicitaron los siguientes remedios:

1. Se declare que la Demandada, Victoria Sandoval, incurrió en actos fraudulentos y en violación al deber fiduciario en perjuicio de la Srta. Serrano y Kalos.
2. Se ordene a la Demandada a traspasar su participación en Kalos a la Srta. Serrano.
3. Prohíba a la Demandada, de manera provisional y/o permanente, continuar utilizando los activos de Kalos, incluyendo, pero sin limitarse a, el local comercial, equipo, inventario y clientela.
4. Se condene a la Demandada, Victoria Sandoval, al pago de una indemnización por concepto de daños y perjuicios, ascendentes a una suma no menor de $75,000.
5. Se impongan las costas, gastos y honorarios de abogado por una cantidad no menor de $10,000.00.[1]

Tras varias instancias, el 31 de octubre de 2025, la señora Sandoval Burgos radicó una *Contestación a Demanda y Reconvención*. En igual fecha, la señora recurrida instó una *Moción en Solicitud de Descalificación de Representación Legal*. Reiteró que, según consta inscrito en el Departamento de Estado, Kalos Salon les pertenece, en partes iguales, a la señora Serrano Ayala y a la señora Sandoval Burgos. Manifestó que el Lcdo. Monefeldt Rondón representa tanto a la señora Serrano Ayala, como a Kalos Salon, en una reclamación en contra de su codueña, la señora Sandoval Burgos. Especificó que el abogado que representa a una corporación le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas. Como corolario, razonó que existía una representación simultánea adversa, ya que la intervención del letrado en el pleito conllevaría incumplir su deber de lealtad hacia una de las partes representadas.

Añadió que la conducta del Lcdo. Monefeldt Rondón generó la apariencia de conducta impropia y podría ocasionar un conflicto de intereses. Manifestó, además, que, aun cuando el letrado optara por representar a una sola de las

---

[1] Véase, Apéndice del recurso de *certiorari*, Entrada Núm. 1, pág. 6.

partes, persistiría el riesgo de faltar de su deber de lealtad, ya que se podría ver compelido a utilizar información obtenida en confidencia durante la representación simultánea. Por tanto, a fines de evitar una violación a los Cánones de Ética Profesional, solicitó la descalificación del Lcdo. Monefeldt Rondón.

El 24 de noviembre de 2025, la señora Serrano Ayala radicó una *Moción Solicitando Permiso para Presentar Demanda Enmendada y en Oposición a Moción en Solicitud de Descalificación de Representación Legal*. En síntesis, adujo que no contrató al Lcdo. Monefeldt Rondón para que representara de manera directa a Kalos Salon, sino con la intención de presentar una acción derivativa en beneficio de la entidad corporativa. Razonó que, como consecuencia, no existía un conflicto ético, ya que la presentación de acciones directas y derivativas no generaba una representación simultánea adversa ni una relación abogado-cliente dual. A su vez, expuso que, en atención a que ambas partes presentaron acciones derivativas en beneficio de Kalos Salon, solicitó que se les permitiera a sus respectivos representantes legales continuar con sus labores, sin la necesidad de contratar un abogado particular para la entidad.

Siendo así, peticionó enmendar la demanda, a los fines de añadir una acción derivativa en beneficio de los intereses de Kalos Salon y, por consiguiente, instituirlo como una parte demandada nominal. Asimismo, suplicó enmendar los remedios solicitados, a entender:

1. Se reconozca la causa de acción directa que tiene la Srta. Serrano en contra de la Demandada, Victoria Sandoval.
2. Se reconozca la causa de acción derivativa por y a nombre de Kalos en contra de la Demandada, Victoria Sandoval.
3. Se declare que la Demandada, Victoria Sandoval, incurrió en actos fraudulentos y en violación al deber fiduciario en perjuicio de la Srta. Serrano y Kalos.
4. Se ordene a la Demandada a traspasar su participación en Kalos a la Srta. Serrano.
5. Prohíba a la Demandada, de manera provisional y/o permanente, continuar utilizando los activos de Kalos, incluyendo, pero sin limitarse a, el local comercial, equipo, inventario y clientela.
6. Se condene a la Demandada, Victoria Sandoval, al pago de una indemnización a la Srta. Serrano (acción directa) por concepto de daños y perjuicios, ascendentes a una suma no menor de $50,000.00.

7. Se condene a la Demandada, Victoria Sandoval, al pago de una indemnización a Kalos (acción derivativa) por concepto de daños y perjuicios a raíz del incumplimiento de la Demandada con su deber de lealtad y fiducia, más su enriquecimiento injusto; por una cantidad no menor de $25,000.00

8. Se impongan las costas, gastos y honorarios de abogado por una cantidad no menor de $10,000.00.[2]

El 25 de noviembre de 2025, la señora Sandoval Burgos notificó una *Oposición a la Presentación de Demanda Enmendada y Enmienda al Epígrafe sin haber mediado permiso del Tribunal y Réplica a la Oposición a Moción en Solicitud de Descalificación de Representación Legal y Solicitud de Honorarios por Temeridad.* Manifestó que, en los inicios del pleito, el Lcdo. Monefeldt Rondón había asumido la representación legal de la señora Serrano Ayala y Kalos Salon. Esbozó que, como consecuencia, el letrado había tenido acceso a información, datos y documentos de Kalos Salon. Advirtió que, de autorizar la enmienda solicitada, Kalos Salon se convertiría en una parte adversa. Razonó que, aun cuando el Lcdo. Monefeldt asumiera de manera exclusiva la representación de la señora Serrano Ayala, persistiría el riesgo de violar su deber de lealtad. Así dispuesto, reiteró su petición de descalificación.

En igual fecha, la señora Serrano Ayala radicó una *Dúplica a Moción Solicitando Permiso para presentar Demanda Enmendada y en Oposición a Moción en Solicitud de Descalificación de Representación Legal.* El 29 de diciembre de 2025, el TPI emitió una *Orden* a través de la cual autorizó la *Demanda Enmendada.*

Atendidos los planteamientos de las partes, en relación a descalificación solicitada, el 17 de febrero de 2026, notificada el día siguiente, el foro de instancia emitió una *Resolución y Orden.* En virtud del aludido dictamen, ordenó la descalificación del Lcdo. Monefeldt Rondón, por violación al Canon 21 del Código de Ética Profesional, *supra.* Dispuso que el letrado presentó la *Demanda* original, en representación de la señora Serrano Ayala y en representación de Kalos Salon. Expresó que, a pesar de que el Lcdo. Monefeldt Rondón optara por representar únicamente a la señora Serrano Ayala, como adujo en la *Demanda*

---

[2] *Íd.,* Entrada Núm. 25, págs. 6-7.

*Enmendada,* persistiría el riesgo de que fuera compelido a utilizar información obtenida en confidencia. Por tanto, concluyó que se encontraba ante una representación simultánea que resultaba adversa, ya que, independientemente de la posición que el Lcdo. Monefeldt Rondón asumiera, su intervención conllevaría el incumplimiento del deber de lealtad hacia una de las partes representadas.

Asimismo, enfatizó que el hecho de que el abogado asumiera la representación de ambas partes generó una apariencia de conducta impropia y creó la posibilidad de un conflicto de intereses. Añadió que tal conflicto fue incrementado tras presentar una *Demanda Enmendada,* donde se instituyó a Kalos Salon como parte demandada nominal, luego de haber comparecido como parte demandante. Por todo lo cual, razonó que, con el propósito de salvaguardar el deber de lealtad y confidencialidad que rige la práctica del derecho y en aras de evitar una violación a los Cánones de Ética Profesional y preservar la integridad del proceso judicial, toda duda de impropiedad o conflicto debía resolverse a favor de la descalificación.

Inconforme, el 5 de marzo de 2026, la señora Serrano Ayala presentó una *Moción de Reconsideración sobre Resolución,* la cual fue denegada mediante *Orden* notificada el 9 de marzo de 2026. Insatisfecha aún, el 2 de abril de 2026, acudió ante nos mediante *Petición de Certiorari* en la cual realizó los siguientes señalamientos de error:

> **Erró el TPI al concluir que existía una relación abogado cliente entre el abogado que suscribe y la entidad Kalos, en ausencia de evidencia que sustente dicha determinación.**
>
> **Erró el TPI al aplicar el Canon 21 del Código de Ética Profesional en ausencia de una relación abogado-cliente que pudiera dar lugar a un conflicto de intereses.**
>
> **Erró el TPI al no considerar la acción derivativa instada y el carácter nominal de la entidad de Kalos dentro del pleito.**
>
> **Erró el TPI al determinar que "toda duda de impropiedad o conflicto de intereses debe resolverse a favor de la descalificación".**

Ese mismo día, la peticionaria instó una *Urgente Moción en Auxilio de Jurisdicción.* El 6 de abril de 2026, este Tribunal dictó una *Resolución* en virtud

de la cual denegamos la solicitud en auxilio de jurisdicción y le concedimos a la parte recurrida un término para presentar su alegato en oposición.

Por su parte, el 16 de abril de 2026, la parte recurrida notifico su *Alegato en Oposición al Recurso de Certiorari.* Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari,* la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari,* a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para analizar el problema.

C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello,* 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

El Tribunal de Primera Instancia tiene autoridad para ordenar la descalificación de un abogado. *K–Mart Corp. v. Walgreens,* 121 DPR 633, 638 (1988). Procede la descalificación cuando el abogado "incurr[e] en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as)". Regla 9.3 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V R.9.3. Según se ha resuelto, "[u]na orden de descalificación puede proceder, ya sea para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito." *Job Connection Center v. Sups. Econo,* 185 DPR 585, 596 (2012); *Meléndez Vega v. Caribbean Intl. News,* 151 DPR 649, 661-662 (2000).

Cuando es una parte quien solicita la descalificación de un abogado, el TPI debe hacer un análisis de la totalidad de las circunstancias, considerando los siguientes factores:

(i) si quien solicita la descalificación tiene legitimación activa para invocarla;
(ii) la gravedad de la posible violación ética involucrada;
(iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados;
(iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y;
(v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *Job Connection Center v. Sups. Econo, supra,* págs. 597-598; *Liquilux Gas Corp v. Berríos, Zaragoza,* 138 DPR 850, 864 (1995).

Aunque no constituye un procedimiento disciplinario, una descalificación afecta los derechos de las partes y el trámite del procedimiento. En consideración a ello, la descalificación es un remedio que no se debe imponer ligeramente. Solo procede cuando sea estrictamente necesario. Si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes, la descalificación debe ser denegada. El Tribunal debe realizar un balance entre el efecto adverso de la representación y el derecho a un juicio justo e imparcial. *Job Connection Center v. Sups. Econo, supra,* págs. 599-602.

La determinación de derecho del TPI, de descalificar a un abogado, es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. *Meléndez Vega,* 151 DPR a la pág. 664; *Lluch v. España Service Sta.*, 117 DPR 729 (1986); *Valencia, Ex parte*, 116 DPR 909 (1986). En tal sentido, se revoca esta determinación si se demuestra que hubo un craso abuso de discreción, que el TPI actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o que la intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170 (1992); *Lluch v. España Service Sta.*, *supra*.

**-C-**

Atinente a la controversia ante nos, el Canon 21 del Código de Ética Profesional, *supra*, dispone lo siguiente:

[...]

No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueben. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.

Al amparo del referido canon, es norma reiterada, que los miembros de la profesión legal deben evitar los siguientes escenarios que reflejan conflicto de intereses: (a) aceptar la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior, situación conocida como representación sucesiva adversa; (b) aceptar la representación simultánea de dos (2) clientes con intereses encontrados, situación conocida como representación simultánea de clientes, y (c) aceptar la representación legal

conociendo que su juicio profesional puede verse afectado por sus intereses personales. *In re Rafucci Caro,* 206 DPR 589, 609 (2021).

En lo que respecta a la instancia de representación simultánea adversa, por medio de su proscripción se pretende evitar que un abogado en beneficio de un cliente "abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones actuales con otro cliente, puesto que, abogaría así por causas contrarias." *In re Pietri Torres,* 201 DPR 583, 595 (2018). La aludida prohibición "se extiende no solo a la existencia real del conflicto, sino a conflictos aparentes pero que llevan consigo la semilla de un posible o potencial conflicto." *In re Aponte Duchesne,* 191 DPR 247, 257 (2014).

Huelga resaltar, que independientemente que un cliente consienta o no a una representación simultánea antagónica, un abogado no puede asumir ese tipo de representaciones, debido a que, de la misma, surge una relación sustancial que implica intereses adversos. *Otaño v. Vélez,* 141 DPR 820, 826 (1996). Cónsono con ello, para que un abogado renuncie a la representación simultánea adversa, el cliente no tiene que probar que existió una violación al factor de confidencialidad, ya que para que proceda tal renuncia solo es suficiente que pruebe: (a) la existencia de una relación previa de abogado y cliente; (b) la relación sustancial vigente entre ambas representaciones conflictivas; y (c) el efecto adverso que surge de la representación dual de ellas. *Íd,* pág. 827.

### III.

En el recurso que nos ocupa, la parte peticionaria nos solicita que revisemos una *Resolución y Orden* mediante la cual el TPI ordenó la descalificación de su representante legal, por haberse configurado una representación simultánea adversa. Señala que la inclusión de Kalos Salon, como parte demandante en la *Demanda* original, respondió a un error procesal, ya que de la misma se desprende que la intención de la parte peticionaria siempre fue presentar una acción derivativa. De manera similar, manifiesta que, ante la ausencia de una relación abogado-cliente, la aplicación del Canon 21 del Código de Ética Profesional, *supra,* resultaba improcedente. Asimismo, expone

que, previo a ordenar una descalificación, el Tribunal debía evaluar si la representación en controversia le ocasionaba perjuicio o desventaja a la parte promovente.

Según hemos reseñado, surge del expediente que Kalos Salon se encuentra inscrito a favor de la señora Serrano Ayala y la señora Sandoval Burgos, en partes iguales. Asimismo, consta en la *Demanda* original que el Lcdo. Monefeldt Rondón compareció en representación de la señora Serrano Ayala, en su carácter personal, al igual que en representación de Kalos Salon. No obstante, luego de que la representación fue controvertida por la señora Sandoval Burgos, la señora Serrano Ayala solicitó enmendar la demanda, a los efectos de convertir la reclamación en una acción derivativa e instituir a Kalos Salon como parte demandada nominal, lo cual fue autorizado por el TPI.[3]

A pesar de que, mediante la *Demanda Enmendada*, el Lcdo. Monefeldt Rondón únicamente asumió la representación legal de la señora Serrano Ayala, la realidad fáctica es que, en los inicios del pleito, se identificó a sí mismo como representante legal de la señora Serrano Ayala, así como de Kalos Salon. No fue hasta la presentación de la solicitud de descalificación, luego de varios trámites en los cuales compareció como representante de ambas partes, que el Lcdo. Monefeldt Rondón se vio obligado a cuestionar su intervención como abogado de la señora Serrano Ayala y Kalos Salon.

En atención a ello, el foro de instancia concluyó que el Lcdo. Monefeldt Rondón violó el Canon 21 del Código de Ética Profesional, *supra*. Detalló que el letrado fue contratado por la señora Serrano Ayala para que la representara en su carácter personal y, a su vez, representara a Kalos en una acción contra de la señora Sandoval Burgos. Sin embargo, precisó que, mediante la *Demanda Enmendada*, el Lcdo. Monefeldt Rondón asumió la representación exclusiva de la señora Serrano Ayala e instituyó a Kalos como parte demandada nominal, luego de su comparecencia inicial como parte demandante. Explicó que tal

---

[3] Cabe destacar que la señora Serrano Ayala arguye que, según se desprendía de la *Demanda* original, su intención siempre fue presentar una acción derivativa en beneficio de Kalos Salon. No obstante, constatamos que, al iniciar el pleito, no se solicitó remedio alguno a favor de Kalos Salon. Como resultado, no era posible concluir, de manera razonable, que la causa de acción instada versaba sobre una acción derivativa.

situación incrementó la apariencia de conducta impropia y creó la posibilidad real de un conflicto de intereses futuro. Cónsono con lo anterior, entendió que la intervención del Lcdo. Monefeldt Rondón conllevaría el incumplimiento del deber de lealtad hacia uno de sus clientes, el cual incluye el ejercicio de un criterio profesional independiente y la preservación de sus confidencias.

Como es sabido, el Tribunal tiene la obligación de evitar la apariencia de conducta impropia y cualquier posible violación a los cánones del Código de Ética Profesional. De igual manera, se ha enfatizado que la determinación de descalificar a un abogado recae bajo la discreción del foro de instancia en el manejo del caso.

Así dispuesto y, luego de un examen cuidadoso del expediente, a la luz de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual esta Curia deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. En el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos constar en esta *Sentencia,* se *deniega* la expedición del auto de *certiorari* solicitado. Se devuelve al Tribunal de Primera Instancia, Sala Superior de San Juan, para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones